# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

M. RANDY RICE, Trustee                                                                PLAINTIFF

v.                        No. 2:17CV126 JLH

PRAIRIE GOLD FARMS;
and FRANK PRISLOVSKY                                        DEFENDANTS

## OPINION AND ORDER

This is an adversary proceeding commenced by Chapter 7 bankruptcy trustee Randy Rice in bankruptcy court to recover as an avoidable preference a $71,957.10 payment that Prairie Gold Farms received from the debtor, Turner Grain, during the 90 days prior to Turner Grain filing a voluntary Chapter 11 petition (later converted to a Chapter 7 proceeding). The defendants moved to withdraw the reference, Rice did not respond, and the Court granted the motion to withdraw the reference on August 1, 2017. Document #1. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Documents #8 and #11. For the following reasons, the Trustee's motion is denied and the defendants' motion is granted.

## I.

Turner Grain was an Arkansas grain brokerage corporation. Frank Prislovsky is a farmer and a partner in Prairie Gold Farms, an Arkansas general partnership. Turner Grain regularly purchased grain from the defendants. Karen Marshall of Hurley & Associates Agri-Marketing Centers of Charleston, Inc. helps Prairie Gold Farms market its grain and sell it for the highest available price. Turner Grain and Prairie Gold Farms entered into two contracts on May 7, 2014. Document #12-1. Pursuant to one contract, Prairie Gold Farms agreed to sell 5,000 bushels of wheat to Turner Grain, who agreed to pay $6.78 per bushel. *Id.* at 1. Pursuant to the other contract, Prairie Gold Farms agreed to sell 5,000 bushels of wheat to Turner Grain, who agreed to pay $7.09 per

bushel. *Id*. at 2. Both contracts include a notation: "Booked via Karen Marhsall Hurley & Associates , E-mailed to Karen." Document #12-1. Both contracts provide that shipment was expected to begin anytime from June 1, 2014 through July 31, 2014. *Id*.

The record indicates that Prairie Gold Farms delivered the following shipments of wheat to Turner Grain. On July 21, 2014, Prairie Gold Farms delivered 6,533.67 bushels. Document #12-2 at 3-4. On August 4, 2014, Prairie Gold Farms delivered 4,279.40 bushels. *Id*. at 1-2. The total number of bushels Prairie Gold Farms delivered to Turner Grain is 10,813.07. *Id*. at 1-4. Then, on August 11, 2014, Turner Grain made a payment to Prairie Gold Farms in the amount of $71,957.10. Document #8-1. The check is dated August 4, 2014.[1] *Id*. at 2. Turner Grain filed a voluntary Chapter 11 bankruptcy petition on October 23, 2014. The case was converted to a Chapter 7 proceeding on May 15, 2015, and Rice was appointed trustee on May 12, 2016. The Trustee initiated this adversary proceeding on October 10, 2016. The defendants moved to withdraw the reference on July 14, 2017, and the Court granted the motion on August 1, 2017.

## II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd.*

---

[1] The image of the check provided to the Court is poor quality and the Court cannot ascertain the date. However, the parties do not dispute that Turner Grain issued the check on August 4. *See* Document #20 at 4, ¶ 8.

*v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.*

## III.

The statute governing this case—11 U.S.C. § 547—is intended to "promote equality of distribution to creditors in bankruptcy" by discouraging creditors from "racing to dismember a debtor sliding into bankruptcy." *In re Jones Truck Lines, Inc.*, 130 F.3d 323, 326 (8th Cir. 1997). Generally, the trustee may avoid any transfer of an interest of the debtor in property to or for the benefit of a creditor; for or on account of an antecedent debt owed by the debtor before such transfer was made; made while the debtor was insolvent on or within 90 days before the date of the filing of the petition. 11 U.S.C. § 547(b). However, the trustee may not avoid the transfer to the extent the transfer was a contemporaneous exchange for new value or made in the ordinary course of business. *Id.* at § 547(c).[2] If the trustee can show that a transfer is avoidable under § 547(b), the

---

[2] There are seven other exceptions that the defendants do not claim apply here.

burden shifts to the creditor to prove by a preponderance of the evidence that one of the § 547(c) exceptions applies. *See In re Genmar Holdings*, 776 F.3d 961, 964 (8th Cir. 2015).

The Trustee argues that the transfer is avoidable under § 547(b) and that the defendants have failed to create a genuine dispute of fact as to whether an exception applies. Document #10 at 3. The defendants argue that the Trustee has failed to create a genuine dispute of fact as to whether the transfer is avoidable under § 547(b) because the transfer was not made on account of an antecedent debt. The Bankruptcy Code defines "debt" as a "liability on a claim." *Laws v. United Mo. Bank of Kansas City, N.A.*, 98 F.3d 1047, 1049 (8th Cir.1996) (citing 11 U.S.C. § 101(12)). "A debt is 'antecedent' if it was incurred before the allegedly preferential transfer." *In re Jones Truck Lines*, 130 F.3d at 329. "A debt is incurred 'on the date upon which the debtor first becomes legally bound to pay.' " *Id.* (quoting *In re Iowa Premium Serv., Co.*, 695 F.2d 1109, 1111 (8th Cir.1982) (en banc)). Turner Grain became obligated to pay on July 21 and August 4, the dates the wheat was delivered. Turner Grain paid on August 4, after the deliveries, so the payment was made on account of an antecedent debt. The transfer is avoidable unless the defendants prove an exception applies. *See In re Armstrong*, 291 F.3d 517, 522 (8th Cir. 2002). The defendants argue that, even if the transfer was made on account of an antecedent debt, they have met their burden under § 547(c) to prove that the transfer was a contemporaneous exchange for new value and made in the ordinary course of business. Document #12 at 2.

**A.     Contemporaneous New Value**

Section 547(c)(1) provides that a transfer is not avoidable to the extent it was–

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange . . .

4

"Contemporaneous new value exchanges are not preferential because they encourage creditors to deal with troubled debtors *and* because other creditors are not adversely affected if the debtor's estate receives new value." *See In re Jones*, 130 F.3d at 326. The defendants claim that the § 547(c)(1) exception applies to the $71,957.10 payment because Prairie Gold Farms provided new value to the debtor when it conveyed the grain in a contemporaneous exchange. To prevail on this defense, the defendants must prove by a preponderance of the evidence that (1) both Prairie Gold Farms and Turner Grain intended the delivery of the wheat to Turner Grain and the payment of the money to Prairie Gold Farms to be a contemporaneous exchange; (2) the exchange was in fact substantially contemporaneous; and (3) the exchange was for new value. *In re Genmar Holdings, Inc.*, 776 F.3d at 964; *In re Payless Cashways, Inc.*, 306 B.R. 243, 249 (8th Cir. B.A.P. 2004).

The contracts, the delivery sheets, and Prislovsky's affidavit evidence the parties' intent that the exchange be contemporaneous and the Trustee does not argue that either party did not intend the exchange to be contemporaneous. The contracts show that Prairie Gold Farms promised to sell 10,000 bushels of wheat and Turner Grain promised to buy that amount. Document #12-1. The time-period for delivery under the contracts was June 1-July 31, 2014. *Id*. at 5-6. The delivery sheets show that Turner Grain received wheat from Prairie Gold Farms on July 21 and August 4, 2014, totaling 10,813.07 bushels. Document #12-2. Turner Grain issued a check to Prairie Gold Farms on August 4. Document #12-3 at 2, ¶ 8. The exchange was for new value: wheat. "New value" includes "money's worth in goods. 11 U.S.C. § 547(a)(2).

The issue is whether the exchange for new value was in fact substantially contemporaneous. The Trustee argues that as a matter of law the transfer cannot be considered contemporaneous because it was issued several days after the July 21 delivery and the defendants have failed to show

5

that the payment was in exchange for the July 21 and August 4 deliveries. Document #19 at 4. First, a time lag, standing alone, does not preclude an exchange from being contemporaneous under § 547 (c)(1). *In re Genmar Holdings*, 776 F.3d at 964 (collecting cases). Second, Prairie Gold Farms is not required to allocate the payment to an identifiable shipment. *See In re Payless Cashways*, 306 B.R. at 249. Instead, the Court instead considers all relevant circumstances. *See id*. The parties contracted for the exchange of 5,000 bushels of wheat at $6.78 per bushel and 5,000 bushels of wheat at $7.09 per bushel. Document #12-1. In other words, the parties agreed that the value of 10,000 bushels of the wheat was $69,350. Prairie Gold Farms delivered a total of 6,533.67 bushels on July 21 and 4,279.4 bushels on August 4, so Prairie Gold Farms delivered a total of 10,813.07 bushels to Turner Grain. *See* Documents #8-1 at 4 and #12-2. Prislovsky explained in his affidavit that deliveries spanned a number of weeks until the contract was fulfilled. Document #12-3 at 2, ¶ 5. The day Prairie Gold Farms delivered the 4,279.4 bushels, bringing the total to 10,813.07, Turner Grain issued a check to Prairie Gold Farms for $71,957.10. Document #8-1 at 1-2.

Based on these undisputed facts, Prairie Gold Farms has discharged its burden to prove by a preponderance that the exchange was a substantially contemporaneous transfer. The Trustee has failed come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587, 106 S. Ct. 1348. Therefore, the Court finds that Prairie Gold Farms's delivery of wheat to Turner Grain and Turner Grain's subsequent payment to Prairie Gold Farms constitutes a true exchange of equally-valued consideration. Turner Grain's other creditors are not prejudiced by this finding because its estate received new value—the wheat—in contemporaneous exchange for the payment. *See In re Jones Truck Lines*, 130 F.3d at 326.

## B. Ordinary Course of Business

Even if the payment was not a substantially contemporaneous exchange, § 547(c)(2)(A) applies. Section 547(c)(2) provides that a transfer is not avoidable–

> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was–
>
>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>>
>> (B) made according to ordinary business terms . . .

The purpose of § 547 (c)(2) "is to leave undisturbed normal financial relations . . ." S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978). The defendants assert that the transfer was made in the ordinary course of business of Prairie Gold Farms and Turner Grain.

The Court looks to the facts to determine whether the transfer was made in the ordinary course of business. *See In re Affiliated Foods Southwest, Inc.*, 750 F.3d 714, 720 (8th Cir. 2014). "[T]he cornerstone of the inquiry is that the creditor must demonstrate some consistency with other business transactions between the debtor and the creditor." *Id*. (internal quotation omitted). In his affidavit, Prislovsky describes a simple business relationship between Prairie Gold Farms and Turner Grain. *See* Document #12-3. His grain merchandiser, Marshall, would book grain for delivery by Prairie Gold Farms with Turner Grain. *Id*. at 2-3, ¶¶ 3-4. Turner Grain would prepare a contract. *Id*. Prislovsky explained:

> When the time-period for delivery under a specific booking agreement or contract came due, I would notify employees of Turner Grain. Deliveries usually spanned a number of weeks until the contract was satisfied. Turner [G]rain typically sent trucks to pick up the grain at locations specified by myself. Upon fulfillment of the contracts by Prairie Gold Farms, Turner Grain would issue payment by check.

7

*Id.* at 2, ¶ 5. The defendants submitted a delivery sheet listing several different deliveries of corn by Prairie Gold Farms to Turner Grain on October 30, 2013 and November 14, 2013. Document #12-5 at 2. The defendants also submitted a purchase settlement, which indicates that on November 14, 2013, Turner Grain issued a check to Prairie Gold Farms for the total amount of corn it received on the delivery dates. *Id.* at 1.

The Trustee says that the amount owed for the deliveries was outside the parties' ordinary course of business, focusing on the fact that Turner Grain did not pay for the July 21 delivery until August 4. Document #19 at 5. He maintains that he needs to question "previous owners and employees of the Debtor before this Court" to resolve genuine issues of material fact regarding the parties' ordinary course of business. *Id.* But the defendants have met their burden to demonstrate the absence of any genuine issues of material fact. It is clear from the evidence submitted that it was not out of the ordinary for Turner Grain to wait until the full amount of grain had been delivered to issue payment, and to pay for multiple deliveries at once arising out of different contracts entered into on the same date for different prices. *See* Document #12-5 at 1. The Trustee could have acquired the affidavits of "previous owners and employees of the Debtor" in order to come forward with specific facts establishing a genuine issue of material fact in response to the defendants' evidence. He did not. The undisputed facts establish that the payment was made in the ordinary course of business of Prairie Gold Farms and Turner Grain under § 547(c)(2)(A).

Because the preferential transfer at issue here was a contemporaneous exchange for new value and made in the ordinary course of business, the Trustee may not avoid and recover the $71,957.10 payment.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment is DENIED. The defendants' motion for summary judgment is GRANTED. This action is dismissed with prejudice.

IT IS SO ORDERED this 28th day of March, 2018.

                                                                                              */s/ J. Leon Holmes*
                                                J. LEON HOLMES
                                                UNITED STATES DISTRICT JUDGE